# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

SITTERS ETC., INC., and )
SITTERS ETC., FRANCHISING, LLC, )
)
          **Plaintiffs,** )
)
       **v.** )      **Case No.**
)
**BEAU K. BROTHERS,** )
)
          **Defendant.** )

## VERIFIED COMPLAINT

Plaintiffs Sitters Etc., Inc. and Sitters Etc., Franchising, LLC file this Complaint against Beau Brothers for violation of the Computer Fraud and Abuse Act, pursuant to 18 U.S.C. § 1030(a)(4), (5)(B-C), and (g), and related claims and, in support thereof, allege the following:

## I.     PARTIES

1.     Plaintiff Sitters Etc., Inc. is a corporation organized under the laws of the State of Tennessee with its principal place of business at 216 Centerview Drive, Suite 180, Brentwood, Tennessee 37027.

2.     Plaintiff Sitters Etc., Franchising, LLC is a limited liability company organized under the laws of the State of Tennessee with its principal place of business at 216 Centerview Drive, Suite 180, Brentwood, Tennessee 37027.

3.     Upon information and belief, Defendant Beau Brothers is a citizen and resident of Franklin, Tennessee and resides at 1727 Championship Boulevard, Franklin, Tennessee 37064.

## II. JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because certain claims arise under federal law. This Court has supplemental jurisdiction over the additional claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district under 28 U.S.C. §1391(b)(1) because Defendant resides in this district.

## III. FACTUAL ALLEGATIONS

6.      Plaintiffs Sitters Etc., Inc. and Sitters Etc., Franchising, LLC (together, "Sitters") are in the business of providing personal care, homemaking, respite, meal preparation, Alzheimer's and dementia care, and other services designed to assist the elderly in staying in their homes, along with hospital staffing, assisted living staffing, nursing home staffing, and transportation.

7.      Defendant Beau Brothers was the founder and, along with his wife, was formerly the 100% owner of Sitters.  In approximately January 2015, Greg Jones, a business development consultant for Mr. Brothers, approached non-party CarpeVita, Inc. and its CEO Richard DeSimone about Mr. Brothers' interest in becoming acquired.

8.      In September 2015, CarpeVita Holdings, Inc. and CarpeVita, Inc. (together, "CarpeVita") and Beau Brothers agreed to have Mr. Brothers sell Sitters to CarpeVita.

9.      CarpeVita and Brothers closed on December 23, 2015, and Sitters became wholly-owned subsidiaries of CarpeVita Holdings, Inc. The consideration given in exchange for the acquisition of Sitters included, but was not limited to, the payment of $10,000 cash, 1.25 million shares of stock in CarpeVita Holdings, Inc., and a Promissory Note in the amount of approximately $2.9 million. Mr. Brothers and his wife signed over stock powers in Sitters Etc.,

Inc.; Mr. Brothers assigned his membership interest in Sitters Etc. Franchising, LLC to CarpeVita; and Mr. Brothers executed an Employment Agreement.

10.     In connection with the closing, the parties also agreed to hire Beau Brothers as Chief Operating Officer of Sitters Etc., Inc. and President of Sitters Etc., Franchising, LLC. As such, CarpeVita Holdings, Inc., Sitters Etc., Inc., Sitters Etc., Franchising, LLC, and Mr. Brothers entered into an Employment Agreement for a term of three years whereby Mr. Brothers would be paid an annual salary of $200,000. (Defendant is in possession of a copy of the Employment Agreement.)

11.     The Employment Agreement provided, among other things, that, pursuant to the agreement, Mr. Brothers "shall devote all of [his] business time, attention, skill and efforts exclusively to the business and affairs of [Sitters], [CarpeVita Holdings, Inc.], and their respective subsidiaries and Affiliates."

12.     The Employment Agreement further provides that the agreement can be terminated without prior notice for "cause." "Cause" is defined as

> (1) the Employee's gross negligence in the performance of the material responsibilities of the Employee's office or position; (2) the Employee's gross or willful misconduct in the performance of the material responsibilities of the Employee's office or position; (3) material failure or refusal by the Employee to perform the Employee's duties, as such may be reasonably assigned to the Employee from time to time...(5) the Employee's embezzlement or intentional misappropriation of any property of the Employers or the Purchaser...(7) fraud, dishonesty or other acts or omissions by the Employee that constitute a willful breach of the Employee's fiduciary duty to the Employers....

13.     Exhibit B to the Employment Agreement also contained a number of restrictive covenants and other obligations, including, among other things, obligations to return confidential information, not to solicit Sitters' employees, and not to interfere in any way with Sitters' customers or suppliers.

3

## Pre-Termination Bad Acts by Mr. Brothers

14.     While Mr. Brothers was working as the Chief Operating Officer of Sitters Etc., Inc. and President of Sitters Etc., Franchising, LLC between December 23, 2015 and May 18, 2016, he engaged in a number of tortious acts that severely damaged the company.

15.     For instance, on February 9, 2016, Mr. Brothers issued a check to himself for $6,900. Upon information and belief, this payment did not have a legitimate business purpose.

16.     Further, in February, Mr. Brothers gave himself a $50,000 raise, which had not been approved by his direct superiors at CarpeVita Holdings, Inc. and was an express violation of the Employment Agreement. Mr. Brothers also put his wife on the payroll and, in April, raised her salary to $48,000 per year even though she had no role with the company and did not work to earn this salary.

17.     In addition, Mr. Brothers used company funds to pay for personal expenses and falsely classified these payments. Mr. Brothers would, likewise, regularly use company vehicles and company credit cards for personal expenses and would not report it.

18.     Additionally, in early 2016, when an employee reported suspected wrongdoing at the company and concerns related to possible compliance issues, instead of reporting to his superiors the compliance issues, Mr. Brothers fired the employee based on the professed reason that the employee was "tampering with client files," which was untrue. Upon inquiry, Mr. Brothers initially did not disclose the compliance concerns and ultimately refused to cooperate with the investigation.

19.     Mr. Brothers also hired without proper background check at least one convicted felon and kept her on even after being alerted to this fact and its compliance implications.

4

20.     Mr. Brothers also operated other personal businesses – including a check-cashing service – from the Sitters office.

21.     Mr. Brothers also refused to permit other Sitters employees to have access to the various software programs used by Sitters, even though Richard DeSimone, the Sitters CEO, specifically directed otherwise.

22.     In the end, for the many reasons stated above and others, on May 18, 2016, Mr. Brothers was fired from his positions at Sitters for cause.

## Post-Termination Bad Acts by Mr. Brothers

23.     After his termination, Mr. Brothers began systematic efforts to injure and interfere with Sitters' business in any way possible. These efforts ranged from physically threatening Sitters employees and committing countless acts of computer fraud by continually accessing Sitters' email system, online accounts, and software accounts, blocking legitimate employees' access to these systems, and harassing Sitters employees through these accounts, to emptying money from Sitters' bank accounts. Mr. Brothers has administrator access and knowledge of many employees' user names and passwords and has locked many employees out of Sitters' various email and other electronic systems. All of Mr. Brothers's many acts have caused substantial damage to Sitters, including, but not limited to, lost employees, potential lost clients, potential lost business partners, countless hours spent by employees attempting to remedy Mr. Brothers's many bad acts, inability of Sitters' employees to access Sitters' email system, online accounts, and software accounts in order to do their jobs, lost revenue related to interruption of service of its electronic and online accounts and more.

24.     Two days before Mr. Brothers was terminated, upon information and belief, Mr. Brothers also stole from the Sitters office the desktop computer that Karen Neal, the Director of

Training for Sitters Etc., Franchising, LLC, used for her work at Sitters. On this desktop were a number of documents essential for the operation of Sitters, including, but not limited to, (a) the franchisee operations manual; (b) all franchisee training material; (c) the franchisee library, which contained all information a franchisee would need to operate a non-medical home care business including a proprietary caregiver selection, hiring and development process, along with dozens of caregiving training programs; (d) files on each franchisee, including documentation of weekly communication; (e) tools and processes for Sitters regarding integration and training; (f) the latest client and caregiver survey templates; and (g) the first draft of a policy and procedures manual for Sitters. These documents had been developed over a number of years and much time, money, and effort. Those documents were proprietary to Sitters and were kept confidential by Sitters. (*See* Declaration of Karen Neal).

25.     Further, upon termination, Mr. Brothers removed a laptop computer from his office – which also contained a host of confidential and proprietary Sitters information – and, as such, he left with two Sitters' computers in his possession. He has refused to return these computers despite his obligations otherwise. Upon information and belief, Mr. Brothers is using his Sitters laptop to continue to access the Sitters email system, the "Generations" management system, and engage in the computer fraud referenced below.

26.     Upon termination, Mr. Brothers refused to hand over office keys or cell phones, both of which are property of Sitters.

27.     Upon information and belief, Mr. Brothers has also removed the desktop computer that had been used primarily for human resources purposes and a computer tablet. Upon information and belief, Mr. Brothers continues to possess other property belonging to Sitters.

28.     Upon termination, Mr. Brothers has not returned a Cadillac Escalade, which is a Sitters company car. Mr. Brothers's wife also drives a Sitters company car. To date, the cars have not been returned.

29.     Further, on the day of his termination, Mr. Brothers engaged in the following intentionally disruptive and tortious acts:

- Mr. Brothers removed access to the ADP payroll system for Marlene Dahlem, Sitters' technical support person, in an effort to prevent payroll from being processed. Sitters actively worked to have her access restored;
- Upon leaving, Mr. Brothers threatened Richard DeSimone, the CEO and Secretary Treasurer of Sitters, who was acting as the operator of Sitters after Mr. Brothers's termination, with physical harm: "You're going to get hurt;"
- Mr. Brothers told various employees that they would be terminated when "he gets his company back;"
- Mr. Brothers removed employee access to the Generations software, which is software required to staff care personnel on jobs, record time, and billing. Sitters actively worked to have that access restored but continually encountered problems due to Mr. Brothers's ongoing malfeasance;
- Mr. Brothers removed various files and documents from his office, which are also property of Sitters; and
- Mr. Brothers has admitted that he contacted Ms. Dahlem's mortgage company and claimed that the company should recheck Ms. Dahlem's paperwork.

30.     On May 19, 2016, the day after his termination, Mr. Brothers continued to access the Sitters' computer system for purposes of engaging in fraud, theft, and other unlawful behavior.

31.     For instance, Mr. Brothers removed access to the Sitters server and email system for Ms. Dahlem. Again, Sitters actively worked to have that access restored but continually encountered problems due to Mr. Brothers's ongoing malfeasance.

32.     Mr. Brothers also accessed Sitters' employees' email accounts and downloaded a message that had been sent to the Sitters staff.

33.     Mr. Brothers then listened in on a company conference call to the staff.

7

34.     On the conference call, the Sitters CEO requested that a number of managers contact him via email. Mr. Brothers tampered with a number of employees' access to the email system and changed those individuals' passwords so that they were unable to communicate with the CEO.

35.     At some point either directly before or after his termination, Mr. Brothers accessed Sitters' payroll system and changed the status of certain employees, including Karen Neal, so that it appeared that Karen Neal had been terminated – when she had not.

36.     Mr. Brothers accessed Sitters' Health-Star system and removed the ability of Sitters' on-call staffing coordinator to place personnel to provide services to certain Medicaid patients. Again, Sitters actively worked to have that access restored.

37.     Mr. Brothers notified Sitters' phone system software provider that he was not to cooperate with Mr. DeSimone or any representative of CarpeVita. Mr. Brothers also accessed the Sitters' phone system software to track calls of Sitters personnel.

38.     Mr. Brothers modified Sitters' bank account online access in yet another attempt to disrupt payroll and/or steal money from Sitters.

39.     Mr. Brothers, likewise, cancelled Sitters' company credit cards (of which Sitters is responsible) for certain Sitters' employees and redirected the billing address for company credit cards to his home address.

40.     In addition, based on information provided by Sitters' outside I/T vendor, Sitters learned that Mr. Brothers apparently had his attorney – Hugh Howser – provided with administrator privileges on Sitters' email system which would allow viewing of company email.  Mr. Howser has indicated that he has no knowledge of being provided such access when the undersigned counsel brought the matter to Mr. Howser's attention. Sitters has been working

to remove that access and Mr. Brothers's access by communicating with the email provider. The provider thus far has not removed that access because, upon information and belief, Mr. Brothers is telling the provider that he is still in control of Sitters.

41. On May 20, 2016 – two days after his termination – Mr. Brothers sent a number of profane and threatening emails to a number of Sitters employees and other individuals *from his Sitters' email address*. (True and correct copies of these emails are attached hereto as **Exhibit A**).

42. Further, on May 20, 2016, after Ms. Dahlem removed Mr. Brothers as an administrator of the Sitters email system in the morning, Mr. Brothers called Ms. Dahlem and threatened Ms. Dahlem with physical harm.

43. Mr. Brothers also called Sitters and told Mr. DeSimone that Sitters must make an additional payroll payment to him "or else."

44. Mr. Brothers also demanded that the company's email system provider restore his administrator access to Sitters email system, which the vendor did.

45. As previously asserted, Mr. Brothers also tampered with Sitters' Generations software management system. In particular, Beth Melson, the Sitters' on-call staffing coordinator, placed a number of notes regarding caregivers and re-staffing issues within the Generations software. She noticed later that those notes had disappeared. She placed the notes again within the software and again they disappeared. It is Ms. Melson's understanding that Mr. Brothers was continually erasing her notes, as Mr. Brothers still has administrator access to the Generations software and only an administrator can erase notes. (*See* Declaration of Beth Melson).

46.     Mr. Brothers has also apparently disabled Ms. Melson's ability to send out mass texts and emails to caregivers. This is a tool in the Generations software and is used by staffing coordinators in order to fill multiple open shifts.   (*See* Declaration of Beth Melson).

47.     Upon information and belief, Mr. Brothers is also communicating with caregivers and providing false information to them related to his role at Sitters and the current status of the company.

48.     Mr. Brothers has also deleted a number of employees' emails. In particular, Mr. Brothers has deleted all emails between Karen Neal and Janice Woodall from Ms. Neal's inbox and Sent Messages folder. Ms. Woodall has been locked out of the email system and, thus, cannot confirm but suspects that her emails with Ms. Neal have been deleted as well. Mr. Brothers has also deleted emails between Karen Neal and the State of Tennessee Department of Intellectual and Developmental Disabilities, whose office coordinates quality health and supportive services to Tennesseans with intellectual and developmental disabilities. Both Ms. Neal's sent emails and the emails in her inbox have been deleted.

49.     Mr. Brothers, likewise, had contacted a number of Sitters employees and told those employees not to come into work. As a direct result of Mr. Brothers's acts, the Sitters office has been severely disrupted. On Friday May 20, 2016, multiple Sitters employees were crying in the office due to Mr. Brothers's threats and harassment. Many others expressed fear to come in to work on Monday or even to go to their cars in the parking lot of the office. Sitters was forced to call the police and had a police officer stay at the office on Friday afternoon. Sitters was also forced to close the office at 3:00pm on Friday because the office was incapable of functioning due to the harassment and other acts of Mr. Brothers. Sitters then had a police officer stationed at the office all day on Monday, May 23, 2016.

50.     Likewise, on May 20, 2016 – two days after Mr. Brothers was terminated – Mr. Brothers issued to himself a $45,000 cashier's check from a Fifth Third bank account owned by Sitters and also issued a $5,000 check to an unknown recipient from that bank account. On that same day, Mr. Brothers also paid off three separate personal credit cards – two American Express cards and one Chase Bank card. These unauthorized payments resulted in a number of overdrafts – and related overdraft fees – to this Fifth Third Sitters bank account.

51.     On May 27, 2016 – nine days after his termination – Mr. Brothers withdrew without authorization all available funds from two Sitters' bank accounts at CapStar Bank. Only upon insistence of CapStar Bank's counsel did Mr. Brothers return the funds on May 31, 2016.

52.     Upon information and belief, Mr. Brothers, likewise, has contacted customers and other vendors in further attempts to interfere with Sitters' relationships with these people and entities.

53.     On or around May 26, 2016, Mr. Brothers also represented to the Tennessee Department of Mental Health & Substance Abuse Services Office of Licensure that Mr. Brothers was still the owner of Sitters because – according to Mr. Brothers – the deal for CarpeVita Holdings, Inc. to purchase Sitters had allegedly not occurred due to a lack of consideration.

## IV.     CAUSES OF ACTION

### Count I
### Violation of the Computer Fraud and Abuse Act ("CFAA"), pursuant to 18 U.S.C. § 1030(a)(4), (5)(B-C), and (g)

54.     Plaintiffs restate and incorporate the allegations set forth in the foregoing paragraphs.

55. As detailed above, after his termination, Mr. Brothers accessed a number of different computers, computer systems, software accounts, and online accounts owned by Sitters Etc., Inc. and/or Sitters Etc., Franchising, LLC.

56. His access of these computers and computer systems was entirely without authorization.

57. Mr. Brothers accessed these computers, computer systems, software accounts, and online accounts knowingly and with an intent to defraud Sitters Etc., Inc. and/or Sitters Etc., Franchising, LLC and, through his access of these computers and computer systems, was able to obtain items of value – namely, money from Sitters Etc., Inc. and/or Sitters Etc., Franchising, LLC's bank accounts.

58. Mr. Brothers also intentionally accessed computers, computer systems, software accounts, and online accounts owned by Sitters Etc., Inc. and/or Sitters Etc., Franchising, LLC without authorization and caused damage and loss to Sitters Etc., Inc. and Sitters Etc., Franchising, LLC in an amount well over $5,000. In particular, Sitters Etc., Inc. and Sitters Etc., Franchising, LLC and their respective employees have suffered and continue to suffer interruption in service of a number of different computer systems, software accounts, and online accounts, and have incurred substantial costs – in time and capital – in attempts to regain service of these computer systems, software accounts, and online accounts. Sitters Etc., Inc. and Sitters Etc., Franchising, LLC have suffered lost revenue due to this interruption of service and other wrongful access by Mr. Brothers.

59. In engaging in the above-referenced conduct, Mr. Brothers acted intentionally, maliciously, and recklessly.

60.     Sitters Etc., Inc. and Sitters Etc., Franchising, LLC have been damaged as a direct and proximate result of Mr. Brothers's wrongdoing.

<u>**Count II**</u>
<u>**Breach of Employment Agreement and Breach of the Duty of Good Faith and Fair**</u>
<u>**Dealing**</u>

61.     Plaintiffs restate and incorporate the allegations set forth in the foregoing paragraphs.

62.     Sitters and Beau K. Brothers entered into the Employment Agreement on or around September 1, 2015 and the Employment Agreement went into effect on December 23, 2015. The Employment Agreement is governed by Delaware law.

63.     Pursuant to the Employment Agreement, Mr. Brothers had a number of obligations to Sitters including, but not limited to, that he devote his time, skill, efforts, and attention to the business and affairs of Sitters and that he act in the best interests of Sitters at all times.

64.     Pursuant to Paragraph 4 of Exhibit B to the Employment Agreement, Mr. Brothers also had express obligations, among other things, not to use Sitters' documents, information, and software after his termination and, instead, to return all such documents, information, and software to Sitters.

65.     As detailed above, Mr. Brothers engaged in the following acts of which Sitters is now aware, including looting the company, failing to properly investigate alleged compliance issues or cooperate in the related investigation, improperly firing employees, and hiring personnel that did not meet minimum requirements necessary to perform duties. Mr. Brothers has further refused to return Sitters' documents, information, and software and, instead,

continues to use Sitters' documents, information, and software to interfere with Sitters' business.

66.     In engaging in the above-referenced conduct, Mr. Brothers acted intentionally, maliciously, and recklessly and breached his employment contract and his duty of good faith and fair dealing.

67.     As a direct and proximate result of Mr. Brothers's breaches of contract, Sitters have been damaged in an amount to be determined at trial.

<u>Count III</u>
<u>Breach of the Duties of Care and Loyalty</u>

68.     Plaintiffs restate and incorporate the allegations set forth in the foregoing paragraphs.

69.     Sitters Etc., Inc. and Sitters Etc., Franchising, LLC employed Mr. Brothers as its Chief Operating Officer and President, respectively, from approximately December 23, 2015 to May 18, 2016.  Sitters Etc., Inc. and Sitters Etc., Franchising, LLC paid Mr. Brothers's salary and provided him with benefits.

70.     As an employee of Sitters Etc., Inc. and Sitters Etc., Franchising, LLC, Mr. Brothers had duties of care and loyalty to Sitters Etc., Inc. and Sitters Etc., Franchising, LLC. Mr. Brothers was obligated to act solely for the benefit of Sitters Etc., Inc. and Sitters Etc., Franchising, LLC. Mr. Brothers had a duty to protect the interests of Sitters Etc., Inc. and Sitters Etc., Franchising, LLC and an obligation to refrain from conduct which would injure Sitters Etc., Inc. and Sitters Etc., Franchising, LLC or was adverse to Sitters Etc., Inc. and Sitters Etc., Franchising, LLC's interests. Mr. Brothers also was required to act in an informed and deliberate manner in making business decisions related to Sitters Etc., Inc. and Sitters Etc., Franchising, LLC.

14

71.     As detailed above, Mr. Brothers breached his duties of care and loyalty by acting adversely to the interests of Sitters Etc., Inc. and Sitters Etc., Franchising, LLC, by intentionally, maliciously, and/or recklessly looting the company, failing to properly investigate alleged compliance issues or cooperate in the related investigation, improperly firing employees, hiring personnel that did not meet minimum requirements necessary to perform duties, and generally acting in a manner to injure the companies.

72.     Mr. Brothers also irrationally squandered, looted, and gave away assets of Sitters Etc., Inc. and Sitters Etc., Franchising, LLC by paying himself large sums of money unrelated to any work for the company, giving himself a raise without approval, and putting his wife on the payroll and paying his wife a salary when she performed no work for the company.

73.     In engaging in the above-referenced conduct, Mr. Brothers acted intentionally, maliciously, and recklessly.

74.     As a direct and proximate result of Mr. Brothers's breaches, Sitters have been damaged in an amount to be determined at trial.

## Count IV
## Conversion

75.      Plaintiffs restate and incorporate the allegations set forth in the foregoing paragraphs.

76.     Sitters Etc., Inc. and Sitters Etc., Franchising, LLC provided Mr. Brothers with access to, among other things, the bank accounts and funds of Sitters.

77.     Sitters Etc., Inc. and Sitters Etc., Franchising, LLC provided Mr. Brothers and his wife with cars related to Mr. Brothers's work for Sitters.

78.     Sitters Etc., Inc. and Sitters Etc., Franchising, LLC provided Mr. Brothers with cell phones and computers related to Mr. Brothers's work for Sitters.

79.     In his efforts to loot and steal from Sitters Etc., Inc. and Sitters Etc., Franchising, LLC, Mr. Brothers misappropriated Sitters' funds by paying himself and his wife large sums unrelated to any work for the company and using Sitters' funds to pay personal expenses.

80.     Since his termination, Mr. Brothers has not returned Sitters' cars, cell phones, or computers to Sitters.

81.     Sitters Etc., Inc. and Sitters Etc., Franchising, LLC have been damaged as a direct and proximate result of Brothers's wrongdoing.

**Count V**
**Violation of Tennessee Personal and Commercial Computer Act, pursuant to Tenn. Code Ann. § 39-14-602(b)(2)**

82.     Plaintiffs restate and incorporate the allegations set forth in the foregoing paragraphs.

83.     As detailed above, after his termination, Mr. Brothers intentionally and without authorization accessed a number of computers, computer systems, software accounts, and online accounts owned by Sitters Etc., Inc. and/or Sitters Etc., Franchising, LLC for the sole purpose of attempting to damage, destroy, or cause disruption to the proper operation of the computers, computer systems, software accounts, and online accounts.

84.     In engaging in the above-referenced conduct, Mr. Brothers acted intentionally, maliciously, and recklessly.

85.     Sitters Etc., Inc. and Sitters Etc., Franchising, LLC have been damaged as a direct and proximate result of Mr. Brothers's wrongdoing.

**Count VI**
**Tortious Interference with Business Relations**

86.     Plaintiffs restate and incorporate the allegations set forth in the foregoing paragraphs.

87.     Sitters have a number of existing business relationships or potential business relationships with third parties.

88.     Mr. Brothers was aware of these relationships and potential relationships and engaged in a systematic, wrongful effort to disrupt these relationships. For instance, Mr. Brothers has harassed a number of Sitters' employees by physically threatening those employees with violence, telling them not to come into work, or telling them they had been fired or would be fired.

89.     Mr. Brothers's acts were committed with an improper motive and improper means.

90.     In engaging in the above-referenced conduct, Mr. Brothers acted intentionally, maliciously, and recklessly.

91.     Sitters Etc., Inc. and Sitters Etc., Franchising, LLC have been damaged as a direct and proximate result of Mr. Brothers's wrongdoing.

### Count VII
### Violation of the Tennessee Uniform Trade Secrets Act pursuant to Tenn. Code Ann. § 47-25-1701, et. seq.

92.     Plaintiffs restate and incorporate the allegations set forth in the foregoing paragraphs.

93.     The Tennessee Trade Secrets Act ("TTSA"), codified at Tenn. Code Ann. § 47-25-1701 et seq., prohibits persons from misappropriating trade secrets.  The TTSA prohibits persons from obtaining and using trade secrets when the trade secret was acquired by improper means or was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use.

17

94.     Mr. Brothers has knowingly violated the TTSA. As detailed above, prior to his termination, Mr. Brothers stole a desktop computer from Sitters that was used by Karen Neal for a number of different essential operations for Sitters. The desktop contained a number of documents, including, but not limited to, (a) the franchisee operations manual; (b) all franchisee training material; (c) the franchisee library, which contained all information a franchisee would need to operate a non-medical home care business including a proprietary caregiver selection, hiring and development process, along with dozens of caregiving training programs; (d) files on each franchisee, including documentation of weekly communication; (e) tools and processes for Sitters regarding integration and training; (f) the latest client and caregiver survey templates; and (g) the first draft of a policy and procedures manual for Sitters. These documents had been created by Sitters employees over a number of years and much time, effort, and money. These documents are proprietary to Sitters and kept confidential by Sitters.

95.     After his termination, Mr. Brothers also stole the laptop that he used at Sitters. This laptop also contained a host of proprietary Sitters documents and information.

96.     Mr. Brothers has knowingly misappropriated the trade secrets of Sitters and, upon information and belief, is using the trade secrets to compete unlawfully with Sitters and to facilitate Mr. Brothers's unfair competition with Sitters.

97.     As a direct and proximate result of Mr. Brothers's misappropriation, Plaintiff has been damaged and is entitled to all damages, attorneys' fees, costs and remedies permitted under Tenn. Code Ann. § 47-25-1701 et seq.

**Count VIII**
**Writ of Attachment pursuant to Tenn. Code Ann. § 29-6-101, et seq.**

98.     Plaintiffs restate and incorporate the allegations set forth in the foregoing paragraphs.

99.     Mr. Brothers is indebted to Sitters Etc., Inc. and Sitters Etc., Franchising, LLC for the many causes of action detailed above.

100.    By virtue of his position as Chief Operating Officer of Sitters Etc., Inc. and President of Sitters Etc., Franchising, LLC, Mr. Brothers had the power, authority, ability and opportunity to control the assets of Sitters Etc., Inc. and Sitters Etc., Franchising, LLC, including cars, computers, and cell phones, among others.

101.    After he was terminated, Mr. Brothers has failed to return this property.

102.    Upon information and belief, Mr. Brothers has fraudulently disposed of, or is planning to fraudulently dispose of, this property. These actions constitute grounds for issuance of a writ of attachment pursuant to Tenn. Code Ann. § 29-6-101(6).

103.     Plaintiffs are therefore entitled to a writ of attachment of the assets and property of Sitters Etc., Inc. and Sitters Etc., Franchising, LLC in Mr. Brothers's possession.


WHEREFORE, Sitters requests that the Court enter judgment in their favor awarding Plaintiffs the following relief:

1.     A preliminary and permanent injunction for the following relief:

    a. Enjoining Mr. Brothers from accessing any computers, computer systems, software accounts, and online accounts, or any other company computer system in any way;

    b. Enjoining Mr. Brothers from representing that he speaks for any of the Plaintiffs or is affiliated with Plaintiffs in any way;

    c. Enjoining and restraining Beau Brothers from harassing and threatening Sitters employees and representatives;

d.  Ordering Mr. Brothers to return all property of the Plaintiffs, including vehicles, cell phones, computers, keys, and any other items in Mr. Brothers's possession; and

e.  (i) ordering Mr. Brothers to turn over all signatory authority he continues to maintain for all Sitters' bank accounts, including, but not limited to, the CapStar and Fifth Third accounts and/or (ii) enjoining Mr. Brothers from withdrawing any funds from any Sitters' bank accounts, accessing any Sitters' bank accounts, or otherwise directing any payments from any Sitters' bank accounts, including, but not limited to, the CapStar and Fifth Third accounts.

2.  Compensatory damages in an amount to be determined at trial, including, but not limited to, the compensation paid to Mr. Brothers by Plaintiffs;

3.  Treble, statutory and/or punitive damages as permitted by law;

4.  Attorneys' fees and costs, as provided for under the Employment Agreement, and, otherwise, as permitted by law;

5.  Pre-judgment interest; and

6.  Such other and further relief, both general and special, at law or in equity, to which Plaintiffs are justly entitled.

## VERIFICATION

STATE OF NEW JERSEY,

COUNTY OF *Morris*

     Richard DeSimone, as Chief Executive Officer and Secretary Treasurer of Sitters, Etc., Inc., being duly sworn, deposes and says that he has read the foregoing Complaint and knows the contents thereof and that the same are true to the best of his own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters he believes them to be true.

Sworn and subscribed before me on this

the _6_ day of June, 2016.

_Kristy R Borst_
Notary Public

My Commission Expires: _02/15/2020_

Kristy L Borst
Notary Public
New Jersey
My Commission Expires 02/15/2020
No. 2325194

Respectfully Submitted,

s/ Salvador M. Hernandez
John R. Jacobson (#14365)
Salvador M. Hernandez (#20121)
Stuart A. Burkhalter (#29078)
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, TN  37203
(615) 320-3700
jjacobson@rwjplc.com
shernandez@rwjplc.com
sburkhalter@rwjplc.com


# CERTIFICATE OF SERVICE

I hereby certify that a courtesy copy of the foregoing document was made upon the following via e-mail and mail on this 6th day of June, 2016:

Hugh C. Howser, Jr. (#2415)
Joshua L. Burgener (#29077)
Dickinson Wright PLLC
424 Church Street, Suite 1401
Nashville, TN 37219-2392
(615) 780-1102
hhowser@dickinson-wright.com
jburgener@dickinson-wright.com
*Counsel for Beau Brothers*

s/ Salvador M. Hernandez