UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SITTERS ETC., INC., and<br>SITTERS ETC. FRANCHISING,<br>LLC, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | NO. 3:16-cv-01200 |
| v. | )<br>) | JUDGE CRENSHAW |
| BEAU K. BROTHERS | )<br>) | |
| Defendant. | )<br>) | |

## **PRELIMINARY INJUNCTION MEMORANDUM AND ORDER**

Plaintiffs Sitters Etc., Inc., and Sitters Etc. Franchising, LLC (collectively "Sitters"), filed this action against their former-Chief Operating Officer Beau Brothers, alleging that Brothers interfered with their business in multiple ways after Sitters terminated him, in violation of Tennessee and federal law. Before the Court is Sitters' motion for a temporary restraining and preliminary injunction order against Brothers. (Doc. No. 6.) The Court held a hearing on the motion on June 8, 2016, which Brothers attended with counsel. For the following reasons, in addition to the reasons stated on the record during the hearing, Sitters' motion is **GRANTED**.

I. FACTUAL FINDINGS

It is undisputed that on May 18, 2016, Sitters terminated Brothers as its Chief Operating Officer. (Doc. No. 24-3 at 9.) As of that date, it is undisputed that Brothers was not and is not employed by Sitters and has no authority to act for Sitters. It is further undisputed that on May 20, 2016, Mr. Brothers issued himself two checks from a Sitters bank account, worth $50,000 in total. (Doc. No. 13 at 2.) Brothers claims that the bank made a mistake and withdrew it from the corporate account rather than his personal account, and the bank later corrected its mistake. (Doc.

No. 24-5 at 1-2.) However, on May 27, 2016, Brothers "withdrew and emptied" two of Sitters' corporate bank accounts with CapStar Bank and deposited that money into his personal account. (Doc. No. 7-2 at 2.) After the general counsel from CapStar contacted Brothers's attorney to inform him about this action, Brothers deposited the money back into the Sitters bank account. (Doc. No. 7-3.) Brothers did not submit an affidavit explaining this action, although his counsel averred at the hearing that it could have been a bank error. It is further undisputed that on May 20, 2016, Brothers sent and received emails using his Sitters email account. (Doc. No. 1-1.) Brothers has not offered an explanation for these emails.

In addition to the undisputed instances where Brothers interfered with Sitters' business activities, it is more likely than not that Brothers, after May 18, has also been engaged in other Sitters business activities, such as accessing Sitters' business software and interfering with Sitters' business practices with governmental regulators. (Doc. No. 9 at 2; Doc. No. 13 at 2.) Sitters also claims that Brothers stole two of its computers (Doc. No. 6-1 at 1; Doc. No. 11 at 2), which Brothers denies. (Doc. No. 24-3 at 9.) Sitters further contends that Brothers has contacted vendors and interfered with Sitters' dealings with those vendors. (Doc. No. 1 at 11.) Brothers denies those allegations as well. (Doc. No. 24-3 at 11.)

II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 allows the Court to issue a preliminary injunction with notice to the adverse party, or a temporary restraining order without notice. Because Brothers had notice of the motion for a temporary restraining order, responded to the motion, filed supporting affidavits, his attorneys entered notices of appearance, and Brothers appeared at the hearing with his attorneys, the Court treats the motion as a motion for a preliminary injunction. See Deleon v. Hamilton Cnty. Sheriff's Dept., No. 1:12-cv-68, 2012 WL 3116280, at *13 (W.D. Tenn. July 31,

2012) ("Rule 65(a) provides for preliminary injunctions with notice and section (b) provides for temporary restraining orders without notice."); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2951.

In deciding whether to grant an injunction pending a trial on the merits, the Court must consider four factors: (1) whether the party seeking injunctive relief has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the injunction is not entered; (3) the potential harm the injunction would cause the opposing party or others; and (4) the public interest. See Bays v. City of Fairborn, 668 F.3d 814, 818-19 (6th Cir. 2012); Tumblebus, Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005). "These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together." Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006); accord United States v. Contents of Accounts, 692 F.3d 601, 608 (6th Cir. 2011). The Court "is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." Certified Restoration Dry Cleaning Network, LLC, v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Jones v. City of Monroe, 341 F.3d 474, 476 (6th Cir. 2003)).

III. ANALYSIS

Sitters argues that all four factors weigh in favor of issuing an injunction. (Doc. No. 6.) Brothers argues that an injunction is not warranted because Sitters does not have a likelihood of success on the merits, Sitters will not be harmed without an injunction, and the public interest weighs against issuing an injunction. (Doc. No. 24-2.)

A. LIKELIHOOD OF SUCCESS

The likelihood of success factor weighs in favor of entering a preliminary injunction. A plaintiff "is not required to prove his case in full at a preliminary injunction hearing," but instead only "show more than a mere possibility of success." Certified Restoration Dry Cleaning Network, LLC, 511 F.3d at 542. However, "a finding that there is simply no likelihood of success on the merits is usually fatal." O'Toole v. O'Connor, 802 F.3d 783, 788 (6th Cir. 2015) (quoting Gonzales v. Nat'l Bd. of Med. Examiners, 225 F.3d 620, 625 (6th Cir. 2000)).

Here, the Court finds that since Brothers's employment ended, he has had no authority or responsibility regarding Sitters' business activity. As such, there is no legal or logical reason whatsoever for him to have any dealings with Sitters' vendors, bank accounts, employees, property, or other related business activities. Nevertheless, the evidence shows that Brothers has continued to involve himself in Sitters' business. The Court is suspicious of Brothers's explanation involving his withdrawal of Sitters' money from their bank accounts, the use of his personal computer with Sitters' business information, and his control over the emails of Sitters' employees. It is likely at trial that Sitters will succeed on the issue of Brothers's engagement in Sitters' business activities after his employment ended.

B. IRREPARABLE HARM

If the Court does not issue the preliminary injunction, the chance that Sitters will suffer irreparable harm is great. Sitters alleges that Brothers is interfering with Sitters' day-to-day operations, harassing employees, and Sitters has to spend time preventing Brothers from being able to access its systems rather than on business matters. The complaint alleges that some irreparable harm has already occurred, and it may continue to occur while the case is pending if the Court does not issue an injunction.

C. Harm to Brothers

It is very significant that this injunction only precludes Brothers from doing what he should not be doing as a matter of law. As a result, it will result in no harm to Brothers. Brothers admits he is no longer an employee at Sitters and should have no dealings with Sitters. This injunction merely prevents Brothers from committing the acts that he claims he is not committing. This factor weighs heavily in favor of issuing the injunction.

D. Public's Interest

The public's interest weighs in favor of issuing the injunction. The evidence suggests that there is some public confusion—especially amongst vendors, banks, and government regulators—about whether Brothers does nor does not represent and speak for Sitters due to his former position as their Chief Operating Officer. This injunction will ensure that there is no further public confusion.

IV. CONCLUSION

For the foregoing reasons, the motion for a temporary restraining order and a preliminary injunction (Doc. No. 6) is **GRANTED**. Pending a trial on the merits, the Court **ORDERS** that Brothers is enjoined from engaging directly or indirectly in Sitters' ongoing business operations. This includes, by way of example and not limitation, that Brothers should not: (1) use property such as computers and software, including Sitters' email and management systems; (2) make any representations to third parties on behalf of Sitters, especially clients, potential clients, vendors, or governmental agencies; or (3) exercise any previous bank signatory authority for any Sitters bank account. In addition, Brothers shall return any Sitters' property. If there is a dispute as to whether certain property is owned by Brothers or Sitters, Brothers shall not destroy the property. Brothers

shall not use or destroy any of Sitters' confidential business information and, if possible, he shall return that confidential information to Sitters.

As stated at the hearing, this injunction is issued with a limited evidentiary record before the Court. If either party determines that the circumstances have changed and wish to dissolve or expand this injunction, they should file an appropriate motion.

Pursuant to Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Sitters recommends a one-hundred dollar bond, and the Court finds that appropriate. Sitters shall provide a one-hundred dollar bond to the Clerk.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE